IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-518-M

| | | |
|---|---|---|
| RICHARD POLIDI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND |
| ELIZABETH U. MENDEL, et al., | ) | RECOMMENDATION |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the motion to dismiss Plaintiff Richard Polidi's first amended complaint by Defendants Elizabeth Mendel, James Payne, Michelle Lee, Kimberly Weinreich, John Heaton, the United States of America, the United States Patent and Trademark Office ("USPTO"), and Kathi Vidal's (collectively, "Defendants"). [DE-12, -15]. Polidi responded to the motion, [DE-22], and Defendants replied, [DE-25]; thus, the matter is ripe for review. The motion to dismiss has been referred to the undersigned for a memorandum and recommendation to the district court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. R. 72.3(c)(1), E.D.N.C. For the following reasons, it is recommended that the motion be allowed.

I.    **Background**

Polidi is a former North Carolina licensed attorney who was disbarred by the North Carolina State Bar ("NCSB") in 2014 for misuse of client funds, then reciprocally disbarred from practicing before the USPTO in 2015. Am Compl. [DE-12] ¶¶ 9–17, 24–49. The instant action—in which Polidi asserts violations of the Federal Tort Claims Act ("FTCA"), the Administrative Procedure Act ("APA"), and the Privacy Act of 1974 ("Privacy Act") and seeks monetary

damages, declaratory relief under the Declaratory Judgment Act ("DJA"), and production of "all known exculpatory material in connection with this matter"—is one of many that Polidi has brought since then to challenge his disbarment. *See, e.g.*, *Polidi v. Boente, et al.*, 5:22-cv-519-M (E.D.N.C.).[1]

Polidi filed the instant case on September 22, 2023, asserting violations of the FTCA and APA and seeking, *inter alia*, declaratory relief under the DJA. [DE-1]. Defendants moved to dismiss in lieu of answering the complaint. [DE-9]. Shortly thereafter, Polidi amended his complaint to add additional defendants and a Privacy Act claim. [DE-12]. Defendants renewed their motion to dismiss to incorporate both the memorandum found at [DE-10] and new arguments related to Polidi's Privacy Act claim. [DE-15]. The renewed motion was referred here on September 9, 2024, and the court issued an order denying Defendants' original motion to dismiss as moot without prejudice on September 10, 2024, [DE-28]. The facts alleged in the amended complaint are difficult to decipher but are summarized below.[2]

### i. Facts Related to Polidi's FTCA, APA, and DJA Claims

During the initial NCSB disciplinary proceeding, Polidi admitted to committing misconduct and voluntarily surrendered his law license. Am. Compl. [DE-12] ¶¶ 9–16. However, Polidi now disputes the misconduct and alleges that the NCSB, and later the USPTO, dishonestly prosecuted him and manipulated him into surrendering his law license, at least in part because of

---

[1] As Defendants point out, in *Polidi v. Boente*, Polidi made nearly identical claims for relief under the FTCA, APA, and DJA. Defs.' Mem. [DE-15] at 2. That case was dismissed on July 26, 2024 after the court adopted the undersigned's memorandum and recommendation, which Polidi did not oppose. *Polidi v. Boente, et al.*, 5:22-cv-519-M, [DE-94]; 2024 WL 3557434 (E.D.N.C. July 26, 2024).

[2] Part of the difficulty is due to Polidi's method of pleading alternative facts. Namely, Polidi recites the same basic facts supporting his FTCA, APA, and DJA claims in separate sections of the complaint with minor variations to account for the different states of mind that Defendants might have had when allegedly performing the relevant conduct. *See* Am. Compl. [DE-12] ¶¶ 9–175. For ease of reference, this Recommendation presents the facts as alleged with the highest level of culpability, i.e., as though Defendants acted knowingly. However, it should be noted that Polidi alleges that even if Defendants did not act knowingly, they were at least reckless or negligent. *See id.*

nefarious "ulterior motives." *Id.* ¶¶ 16–49. Specifically, Polidi contends that "parties who were never disclosed to the plaintiff" improperly influenced the NCSB ethics prosecution, *id.* ¶¶ 18–19, and that, in turn, the NCSB concealed the impropriety, *id.* ¶¶ 20–21. As relevant here, Polidi believes that this alleged misconduct and attempts to conceal it then persisted in the USPTO's reciprocal disciplinary proceeding, as well as in subsequent judicial proceedings reviewing the disbarment decisions and related investigations, because Polidi's former attorney and the two agencies have an "understanding" to never disclose any exculpatory materials to Polidi. *Id.* ¶¶ 24–49, 138.

Polidi describes in depth two sets of events that purportedly support his claims: the alleged concealment of an NCSB report, and the alleged concealment of communications between his former counsel and the NCSB. Turning first to the report allegations, Polidi claims that during the USPTO's preliminary investigation, he advised Kimberly Weinreich, staff attorney for the USPTO, that he had "substantial concerns relating to a lack of due process in North Carolina." *Id.* ¶¶ 25–27. At this time, he also requested to review a "report" that he believes was made by NCSB's deputy counsel and investigator and submitted to the NCSB's grievance committee (referred to herein as the "NCSB report"). *Id.* Polidi believes that, as a part of the USPTO investigation, Weinreich obtained a copy of this report from the NCSB but did not disclose this information to Polidi or respond to any correspondence he initiated prior to the USPTO disciplinary proceeding. *Id.* ¶¶ 28–30. Instead, Weinrich violated "basic duties owed to the plaintiff and to all members of the USPTO" and, in an effort to conceal the improprieties revealed in the report, "tortiously refused to disclose those matters to the plaintiff or to any proper authority." *Id.* ¶ 31.

Polidi asserts that Weinreich shared her findings regarding the allegedly flawed NCSB disciplinary proceeding and NCSB report with Elizabeth Mendel, the USPTO's Associate

3

Solicitor. *Id.* ¶ 32. According to Polidi, Mendel encouraged Weinreich to "conceal such evidence in order to succeed at obtaining a successful prosecution of the plaintiff," and the two proceeded with their investigation despite knowing that "the undisclosed evidence was exculpatory in the disciplinary matter in view of the USPTO regulations." *Id.* ¶¶ 32–34. Polidi attempted to push back against the alleged obfuscation by seeking leave from the USPTO to "request the issuance of a subpoena by the Eastern District of Virginia to obtain the report, and he simultaneously requested discovery from the Office of Enrollment and Discipline." *Id.* ¶ 37. However, the USPTO's Deputy General Counsel, James Payne, denied these requests, and the agency has since denied or outright ignored subsequent requests for similar information. *Id.* ¶¶ 38–40.

Turning next to the concealed communications allegations, Polidi alleges that his former counsel in the underlying NCSB disciplinary proceeding "avoided [his] request for communications he had with the North Carolina State Bar during the representation, not providing a single one for nearly three years after the request. Those communications, with the opposing party, during the representation, belong in the client file and constitute client property in North Carolina." *Id.* ¶ 128. Believing these communications to be exculpatory, at some point during the USPTO investigation, Polidi contacted Kimere Kimball and "indicated to Ms. Kimball that he planned to file a motion in a pending matter requiring his former counsel to comply with the applicable Rules of Professional Conduct and duly provide him with copies of documents belonging in his client file." *Id.* ¶ 134. Kimball indicated to Polidi that she would oppose the motion, "obviating what [Polidi believes] to be her ethical and legal duties." *Id.* ¶ 135. Polidi contends that "the foregoing conduct has aided the secreting of documents and information to which the plaintiff has always been entitled. The Defendants have had a duty to assist with ending the improper secreting of those documents." *Id.* ¶ 137.

4

Polidi describes Defendants' additional allegedly tortious conduct in less detail. Namely, he asserts that "Defendant James O. Payne entered each Order without due authority for its adjudication and entry under the regulations of the USPTO, whether by a delegation of authority from Defendant Michelle K. Lee or otherwise"; that "Defendant John Heaton, counsel with the USPTO Office of General Law, acted in concert with Defendant Payne in connection with the entry of Orders and otherwise in connection with the subject prosecution"; that "Ms. Lee did not exercise due supervision over Defendant Payne nor over the other parties in connection with the instant matter"; and that Defendants "committed substantial wrongful acts and omissions in connection with appeal before the Federal Circuit, including a continued withholding material exculpatory evidence from multiple filings with the Federal Circuit as well as at an oral argument before the Court in Washington, DC." *Id.* ¶¶ 43–48. Polidi argues that because of Defendants' allegedly improper acts and omissions, he "could not meet his burden in connection with the USPTO disciplinary proceeding," and consequently was reciprocally disbarred without adequate process. *Id.* ¶¶ 41, 49.

### ii. Facts Related to Polidi's Privacy Act Claim

According to Polidi, in 2022, he made a request to the USPTO "specifically under the Privacy Act" for production of, *inter alia*, the NCSB report. *Id.* ¶ 177. Despite receiving clarification from Polidi on the legal authority compelling the request, the USPTO "provided a response with an analysis under the Freedom of Information Act ['FOIA'], claiming exemptions under FOIA, with no due analysis under the Privacy Act." *Id.* ¶¶ 178–79. The USPTO's response "to the FOIA request was limited. The USPTO provided a total of 103 responsive pages with large portions of those pages claimed as exempt." *Id.* ¶ 181.

5

Polidi administratively appealed the document production to the USPTO, indicating that "the exemptions were analyzed improperly. Each of those exemptions were made under FOIA. No analysis appears to have been conducted under the Privacy Act." *Id.* ¶ 182. However, Polidi claims that the USPTO never responded to this appeal. *Id.* ¶¶ 183–84. Moreover, Polidi contends that,

> [the] requested and exempted information shows official misconduct. Not only were the exemptions made improperly, but the USPTO intentionally did not even account for the single report made to the North Carolina Bar's Grievance Committee as the plaintiff has sought since the outset. None of the 103 pages appears to comprise that report. At the same time, however, the North Carolina State Bar expressly indicated to the USPTO that the Bar was sending its working file. Upon information and belief the requested report clearly should be, and is, included in the Bar's working file.

*Id.* ¶ 185. In support of these claims, Polidi attached a number of exhibits to the amended complaint, which mostly constitute correspondence between Polidi and the USPTO regarding his FOIA requests. [DE-12-1 to -12-3]. Polidi also attached several exhibits to his response to Defendants' motion to dismiss, including additional correspondence and court documents related to the FOIA requests. [DE-22-1 to -22-2].

## II. Discussion

Defendants move to dismiss Polidi's FTCA, APA, and DJA claims pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and to dismiss Polidi's Privacy Act claim pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, to dismiss all Defendants except for the United States. Defs.' Mem. [DE-10] at 15–27; Defs.' Mem. [DE-15] at 2–14. As part of their motion, Defendants also request that the court take judicial notice of three of Polidi's prior lawsuits: *Polidi v. Lee*, No. 15-1030, 2015 WL 13674860 (E.D. Va. 2015), *aff'd sub nom. Polidi v. Matal*, 709 F. App'x 1016 (Fed. Cir. 2017) ("*Polidi v. Lee I*"); *Polidi v. Lee*, No. 17-1133 (E.D. Va. 2018) ("*Polidi v. Lee III*"); and *N.C. State Bar v. Polidi*, Wake County Superior Court, No. 14-cv-09738 (July 22, 2014) (the "NCSB

disciplinary proceeding"). Defs.' Mem. [DE-10] at 13; *see* Defs.' Mem. Ex. 1 [DE-10-1] at 1; Defs.' Mem. Ex. 7 [DE-10-8]; Defs.' Mem. Ex. 10 [DE-10-11].

### i.     Standard of Review

A court must dismiss all or part of an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  Whether subject matter jurisdiction exists is a threshold question that must be addressed before considering the merits of the case.  *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999); *see also* Fed. R. Civ. P. 12(h)(3) ("if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  The plaintiff, as the party opposing a Rule 12(b)(1) motion to dismiss, has the burden of proving that subject matter jurisdiction does, in fact, exist.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Id.* (citations omitted).

A Rule 12(b)(6) motion aims to test the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To withstand a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted); *see Twombly*, 550 U.S. at 570; *Giarratano*, 521 F.3d at 302.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]."  *Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014).  A court need not accept as true a complaint's legal

7

conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302; *see Iqbal, 556* U.S. at 678–79. Rather, a plaintiff's allegations must "nudge [ ] [his] claims," *Twombly*, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility," *Iqbal*, 556 U.S. at 678–79.

When deciding a motion to dismiss, the court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Straw v. North Carolina*, No. 7:18-cv-00074-M, 2020 WL 1042141, at *2 (E.D.N.C. Mar. 3, 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see King v. Utt*, No. 22-1051, 2023 WL 315255, at *3 (4th Cir. 2023) ("courts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment") (quoting *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015)). Pursuant to Fed. R. Evid. 201(b), a court "may judicially notice a fact that is not subject to reasonable dispute because it is: (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court may take judicial notice on its own or must take judicial notice if a party requests it and the court is supplied with the necessary information. Fed. R. Evid. 201(c).

Finally, in the present case, Polidi is proceeding pro se. Normally, the court is charged with liberally construing a pleading filed by a pro se litigant to allow for the development of a potentially meritorious claim. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the liberal construction rule does not apply when the pro se party is a trained lawyer, like Polidi. *Polidi*, 2015 WL 13674860, at *3 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

8

## ii.    Analysis

*Defendants argue* that Polidi's FTCA, APA, and DJA claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the doctrine of sovereign immunity bars Polidi's FTCA claim; the United States District Court for the Eastern District of Virginia's (the "Eastern District of Virginia") exclusive jurisdiction over USPTO disciplinary decisions bars litigation over Polidi's APA claim in this court, and transfer to the Eastern District of Virginia would be futile; and the facts pleaded in the amended complaint are not sufficient to confer jurisdiction under the DJA. Defs.' Mem. [DE-10] at 16–22. Defendants further contend that dismissing all claims pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate because the doctrine of res judicata bars Polidi's APA and DJA claims, as well as his Privacy Act claim, which is also moot; and the doctrine of judicial estoppel bars Polidi's FTCA claim. *Id.* at 22–26; Defs.' Mem. [DE-15] at 9–14. Lastly, Defendants assert that, in the alternative, the court should dismiss all Defendants except for the United States because the individual Defendants are sued in their official capacities. Defs.' Mem. [DE-10] at 26–27.

Polidi argues that the amended complaint asserts an actionable claim under the FTCA; that neither res judicata nor collateral estoppel applies to bar any of his claims; that this court has jurisdiction over APA claims, and venue is therefore proper here; that this court has subject matter jurisdiction over the DJA claims in view of the court's alleged jurisdiction over the FTCA and APA claims;[3] and that "the action asserts a prima facie case[ ]." Pl.'s Resp. [DE-22] at 8–22

---

[3] In the argument section of his brief, Polidi labels two of the section headings as "The United States District Court for the Eastern District of North Carolina has Jurisdiction Over the Administrative Procedures Act, and Venue is Proper Here." Pl.'s Resp. [DE-22] at 21. However, the body paragraph corresponding with the second as-labelled section heading states that "The Court is submitted to possess jurisdiction over the declaratory judgment claim in view of the [ ] Court's jurisdiction over the remaining claims," *id.*, and the undersigned has interpreted this statement as an argument pertaining to Polidi's DJA, not APA, claims.

9

(internal capitalization omitted). Polidi's brief also points to North Carolina Senate Bill 790 ("Senate Bill 790"), *id.* at 2–5, which was enacted into law on June 28, 2024, N.C. Session Law 2024–25. In doing so, Polidi appears to suggest that an intervening change in the law has occurred, dictating a result in his favor. Pl.'s Resp. [DE-22] at 2–5.

### 1. Polidi's reference to Senate Bill 790 is irrelevant.

To the extent that Polidi attempts to assert a new cause of action in his response by mentioning Senate Bill 790, this argument must fail. A complaint may not be amended by asserting information in briefs or exhibits filed in opposition to a motion to dismiss. *See Mack v. E. Carolina Univ.*, No. 4:21-CV-00108-M, 2022 WL 945595, at *6 (E.D.N.C. Mar. 29, 2022) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *see also Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (same); *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citations omitted). Furthermore, even if the court could consider this assertion, Senate Bill 790 "is effective August 1, 2024, and applies to grievances filed *on or after* that date." N.C. Session Law 2024–25 (emphasis added).

### 2. Judicial notice is appropriate.

As this court has previously held, the judicial notice inquiry "turns on the fact's indisputability." *Straw*, 2020 WL 1042141, at *7. As such, courts may properly take judicial notice of proceedings in other courts and the contents of court records. *Id.* (citing *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)). However, "judicial notice must not be used as an

10

expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters." *Id.* (quoting *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 511 (4th Cir. 2015)). For this reason, the Fourth Circuit has declined to judicially notice documents when "[t]he parties clearly and reasonably disagree about the meaning to be ascribed to" them. *Id.* (quoting *Ohio Valley Env't. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 216 (4th Cir. 2009)).

Here, Defendants request that the court take judicial notice of court documents issued in three of Polidi's prior lawsuits: the final order in *Polidi v. Lee I*, 2015 WL 13674860; the order found at [DE-42] in *Polidi v. Lee III*, Defs.' Mem. Ex. 7 [DE-10-8] at 33–35; and the consent order of disbarment and attached affidavit of surrender issued in the NCSB disciplinary proceeding, Defs.' Mem. Ex. 10 [DE-10-11] at 1–3. Defs.' Mem. [DE-10] at 13–15. In support of their assertion that judicial notice is warranted, Defendants argue that Polidi "appears to dispute the holdings, not the facts in these prior court orders." *Id.* at 14. Defendants also note that the amended complaint mentions the NCSB disciplinary proceeding and the resulting order of disbarment and the USPTO disbarment, as well as the Eastern District of Virginia's denial of Polidi's prior APA claim, which was at issue in *Polidi v. Lee I* and subsequently appealed at the Federal Circuit. *Id.*

In his response, Polidi does not contest the facts of the above-listed court documents or even mention Defendants' request for judicial notice.[4],[5] Pl.'s Resp. [DE-22] at 8–22. Absent

---

[4] Polidi's response "incorporates by reference the Response [Polidi] filed previously in this matter on December 3, 2021, as though asserted fully herein." Pl.'s Resp. [DE-22] at 8. However, the instant case was filed on September 22, 2023. [DE-1]. This Recommendation does not consider briefs filed in any of Polidi's other cases.

[5] Arguably, the failure to assert *any* argument in response could be construed as waiver. *See e.g.*, *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.") (cleaned up); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n.* (4th Cir. 2014) (noting that failure to present legal arguments and "record citations or pertinent legal Footnote continues on the next page.

11

argument to the contrary and considering that "the most frequent use of judicial notice is in noticing the content of court records," *Colonial Penn. Ins. Co.*, 887 F.2d at 1239, the court should find that the facts established in the *Polidi v. Lee I* order, the *Polidi v. Lee III* order, and the NCSB disciplinary proceeding's consent order of disbarment and affidavit of surrender are undisputed and properly subject to judicial notice.

For similar reasons, the court should also take judicial notice of two orders issued in *Polidi v. Mendel*, No. 1:22-cv-00925-PTG (E.D. Va.) ("*Polidi v. Mendel I*"): the order granting the defendants' motion for summary judgment, No. 1:22-cv-00925 (PTG/JFA), 2023 WL 5673116 (E.D. Va. Sept. 1, 2023), and the order denying Polidi's motion to set aside the judgment, [DE-47]. *See* Defs.' Mem. Ex. 11 [DE-15-2] at 48–58, 67–69.[6] While Defendants do not explicitly request that the court take judicial notice of these court records, they reference both documents heavily in the instant motion, [DE-15] at 7–14, and attached them as exhibits, Defs.' Mem. Ex. 11 [DE-15-2] at 48–58, 67–69. Because the orders are court records, Polidi does not contest the facts of either order, and the court may take judicial notice sua sponte, Fed. R. Evid. 201(c), doing so is appropriate here. *See Colonial Penn. Ins. Co.*, 887 F.2d at 1239.

### 3. Polidi's FTCA, APA, and DJA claims are subject to dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Defendants argue that dismissal of Polidi's FTCA, APA, and DJA claims pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate because the doctrine of sovereign immunity bars Polidi's FTCA claim, the Eastern District of Virginia has exclusive jurisdiction over USPTO disciplinary

---

authority supporting . . . a claim" waives the claim); *Best v. Butterball, LLC*, No. 4:22-CV-147-FL, 2024 WL 386921, at *1 (E.D.N.C. Jan. 31, 2024); *accord Hughes v. B/E Aerospace, Inc.*, No. 12-CV-717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do.").

[6] This Recommendation cites to the page number reflected in the CM/ECF footer where, as here, that number differs from the document's internal pagination.

decisions, and the facts pleaded in the amended complaint are insufficient to confer subject matter jurisdiction under the DJA alone. Defs.' Mem. [DE-10] at 15–22. Polidi contends that the amended complaint asserts an actionable claim under the FTCA, that this court has jurisdiction over the APA claims, and that this court has subject matter jurisdiction over the DJA claims because it has jurisdiction over the FTCA and APA claims. Pl.'s Resp. [DE-22] at 7–21.

### A. The intentional torts exception precludes FTCA waiver of sovereign immunity.

As sovereign, the United States is "immune from all suits against it absent an express waiver of its immunity." *Cruthirds v. United States*, No. 5:18-CV-450-FL, 2019 WL 1573691, at *3 (E.D.N.C. Apr. 11, 2019) (quoting *Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir. 2005)). This immunity extends to federal agencies and government officials sued in their official capacity. *Trueman v. United States*, No. 7:12-CV-73-F, 2015 WL 1456134, at *9 (E.D.N.C. Mar. 30, 2015) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). Sovereign immunity is jurisdictional in nature, and "the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Any waiver of sovereign immunity must be strictly construed in favor of the sovereign. *Cruthirds*, 2019 WL 1573691, at *3.

When invoking a waiver, the plaintiff bears the burden of showing "that an unequivocal waiver of sovereign immunity exists." *Longworth v. United States*, No. 5:21-CT-3242-FL, 2022 WL 4587520, at *3 (E.D.N.C. Sep. 29, 2022) (quoting *Welch*, 409 F.3d at 651). The FTCA provides one such waiver and allows complainants to hold the United States liable for certain tort claims "in the same manner and to the same extent as a private individual," 28 U.S.C. § 2674, including "for . . . personal injury or death caused by the negligent or wrongful act or omission of

13

any employee of the [United States] while acting within the scope of his [or her] office or employment," *id.* § 1346(b)(1). *Longworth*, 2022 WL 4587520, at *3 (citing *Clendening v. United States*, 19 F.4th 421, 426 (4th Cir. 2021)); *Evans v. United States*, 105 F.4th 606, 612 (4th Cir. June 24, 2024). Where immunity is waived, the Government may be held liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, the FTCA's waiver of sovereign immunity is narrow in scope, *see Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990), and qualified by several express exceptions, *see* 28 U.S.C. § 2680. As relevant here, § 2680(h) specifically states that the FTCA will not apply to "[a]ny claim arising out of . . . misrepresentation [or] deceit . . . ."

In the instant case, Defendants contend that Polidi's first, third, fifth, and seventh causes of action "sound [ ] in malicious prosecution, abuse of process, and deceit," and are therefore excluded from the FTCA's waiver of sovereign immunity and this court's subject matter jurisdiction. Defs.' Mem. [DE-10] at 17. Polidi responds that the intentional torts exception to the FTCA's waiver of sovereign immunity does not apply because this case "concerns the withholding of evidence which would have been probative of an affirmative defense" and "a breach of duty owed by the Defendants to one of the USPTO's own members and practitioners," not misrepresentation, deceit, malicious prosecution, or abuse of process. Pl.'s Resp. [DE-22] at 8–18.

In *United States v. Neustadt*, the Supreme Court held that all claims arising out of a plaintiff's reliance on a government employee's negligent or intentional misrepresentation are barred by § 2680(h). 366 U.S. 696, 705–07 (1961). Since then, multiple lower courts within the Fourth Circuit have applied *Neustadt* and dismissed similar claims for lack of subject matter jurisdiction at the pleadings stage. *See, e.g.*, *Suter v. United States*, No. 3:04cv358, 2005 WL 6124845, at *2 (W.D.N.C. Mar. 1, 2005), *aff'd*, 441 F.3d 306 (4th Cir. 2006). Defendants assert

14

that the most relevant of these cases is *Russ v. United States*, 129 F. Supp.2d 905 (M.D.N.C. 2001) because it purportedly stands for the proposition that Polidi "cannot evade [the FTCA's intentional torts exception] by pleading the claim as one for negligence." Defs.' Mem. [DE-10] at 18.

In *Russ*, the trial court analyzed an FTCA negligence claim arising from the plaintiffs' purchase of a wheelchair ramp for their home. *Id.* at 906–07. The contractor who built the ramp was recommended to the plaintiffs by the chief of the Veteran's Association ("VA"), but after the ramp malfunctioned and injured one of the plaintiffs, they discovered that the contractor was not licensed in North Carolina and had not obtained the necessary permits for the construction he undertook at the plaintiffs' residence. *Id.* at 907. The *Russ* plaintiffs alleged that, had they known this information, they would not have selected that contractor to perform the construction. *Id.*

Ultimately, the *Russ* court found that even though the plaintiffs characterized their claims as based on simple negligence, "the gravamen of the action [was] misrepresentation." *Id.* at 910. The VA's failure to use due care in communicating information to the plaintiffs was directly related to their injuries, and as a result, the VA's misrepresentations were integral to the plaintiffs' claims, not merely incidental to other negligent conduct. *Id.* Consequently, the court held that the VA's conduct fell under the intentional torts exception to the FTCA, the United States had not waived its sovereign immunity, and the court lacked subject matter jurisdiction. *Id.*

Polidi does not specifically address *Russ* in his response but given that he emphasizes that this case is based on a "breach of duty" and pleads facts in the alternative to allege that the breach was either intentional, reckless, or negligent, the undersigned finds that the Supreme Court case *Block v. Neal*, 460 U.S. 289 (1983) provides an instructive comparison with *Neustadt* and its lower-court progeny. In *Neustadt*, the Court found that the FTCA intentional torts exception applied where home purchasers were furnished an inaccurate report of a Federal Housing Administration

15

inspection and appraisal and thereby induced to buy a house in excess of its fair market value. 366 U.S. at 702. The Court stressed that the intentional torts exception applied because the government had not breached a duty to the plaintiffs that existed separate and apart from its obligation to "use due care in obtaining and communicating information upon which [a] party may reasonably be expected to rely in the conduct of his economic affairs." *Id.* at 706. By contrast, in *Block*, the Court found that the exception did *not* apply to a homeowner's claim that the Farmers Home Administration ("FmHA") failed to properly inspect and supervise construction of her home, even though the FmHA repeatedly inspected the site and reported to the plaintiff that the construction was proper. 460 U.S. at 298–99. The Court emphasized that the plaintiff's claim did not arise from the misrepresentation, but rather from the FmHA's failure to properly supervise construction of her home—in other words, from a duty that existed separate and apart from the FmHA's obligation to use due care in obtaining and communicating information that the plaintiff was likely to rely on. *Id.* at 299.

Here, Polidi alleges multiple FTCA claims: conversion, breach of fiduciary duty, and intentional infliction of emotional distress in the first cause of action; breach of fiduciary duty and negligence in the third cause of action; gross negligence and wanton negligence in the fifth cause of action; and negligence, gross negligence, wanton negligence, conversion, breach of fiduciary duty, and intentional infliction of emotional distress in the seventh cause of action. Am. Compl. [DE-12] at 11–29. Polidi contends that these claims stem from Defendants' alleged failure to disclose exculpatory information during the reciprocal disciplinary proceeding against him, violating a duty of disclosure that he believes exists in both ethics and criminal prosecutions, as well as duties of fairness, honesty, good faith, and candor. Pl.'s Resp. [DE-22] at 6–15; Am. Compl. [DE-12] ¶¶ 52–59, 100–07, 110, 116–17, 120–21, 143–44, 146–47, 150–51, 154, 159–64.

16

He further argues that, because of Defendants' alleged breach, he has been continually deprived of the right to practice law in North Carolina and before the USPTO without due process. Am. Compl. [DE-12] ¶¶ 25–27, 31, 34–35, 77–79, 81–82, 84.

The instant FTCA claims are more like those in *Neustadt* than *Block* because, at bottom, the USPTO did not violate a duty that existed separate and apart from its obligation to use due care in obtaining and communicating information that Polidi was likely to rely on. *See Neustadt*, 366 U.S. at 706. Throughout Polidi's extensive litigation history, other courts have held that Polidi did not have a right to discovery from the USPTO or its agents—including a right to discovery or disclosure of the allegedly exculpatory information that he seeks in the instant case. *See Polidi*, 2015 WL 136748601, at *3 ("It is worth noting at the outset that neither the Constitution nor the APA requires pretrial discovery; rather, Congress has vested the PTO with broad discretionary power to develop rules relating to attorney conduct and discipline.").

Insofar as Polidi disputes the conclusion that the USPTO did not have a duty to provide discovery or disclose exculpatory information, the court should find that he is collaterally estopped from relitigating the issue. "Applying collateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." *Oudeh v. Goshen Med. Ctr., Inc.*, No. 5:22-CV-193-D, 2022 WL 18028281, at *3 (E.D.N.C. Dec. 29, 2022) (quoting *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (cleaned up)); *see Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). Collateral estoppel applies if the proponent demonstrates that:

(1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior

proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*Oudeh*, 2022 WL 18028281, at \*3 (citing *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d at 326);

*see E. Assoc. Coal Co. v. Dir., Off. of Worker's Comp. Programs*, 578 F. App'x 165, 173 (4th Cir.

2014) (per curiam); *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006); *Tuttle*

*v. Arlington Cnty. Sch. Bd.*, 195 F.3d 698, 703 n.6 (4th Cir. 1999). While collateral estoppel is

ordinarily an affirmative defense, a court may raise *sua sponte* the issue in special circumstances

where the previous action was litigated in the same district court, or where all relevant data and

legal records are before the court and judicial economy will be served by invoking the doctrine sua

sponte. *Dingle v. Khan*, No. 5:19-CV-129-D, 2020 WL 2120010, at \*7 (E.D.N.C. Feb. 20, 2020),

*adopted by*, 2020 WL 1272266 (E.D.N.C. Mar. 16, 2020) (citing and quoting *Smith v. Spears*, No.

CV 2:17-3384-PMD-BM, 2018 WL 4523201, at \*3 (D.S.C. Feb. 8, 2018), *adopted by*, 2018 WL

2772668 (E.D.N.C. June 11, 2018)).

Here, the court should find *sua sponte* that Polidi is collaterally estopped from asserting

that he was owed discovery or disclosure of allegedly exculpatory information from Defendants

in the reciprocal USPTO disciplinary proceeding because all five issue preclusion criteria are met.

First, the issue of the USPTO's duty to disclose potentially exculpatory information is identical to

that previously litigated in *Polidi v. Lee I.* 2015 WL 136748601, at \*2–3 ("[Polidi] first argues that

the PTO had an obligation to disclose information assisting in petitioner's defense under the

Supreme Court's decision in *Brady* . . . . [Polidi] next argues that the PTO violated petitioner's due

process rights under the Fourth, Fifth, and Fourteenth Amendments through the PTO's failure to

make the requested disclosures of exculpatory evidence."); *see Oudeh*, 2022 WL 18028281, at \*3.

Second, the issue was resolved in the prior proceeding, and was both critical and necessary to the

18

judgment. 2015 WL 136748601, at *4 (finding "there is no basis to conclude that the PTO's decision to exclude [Polidi] from practice before the agency was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'" because the USPTO is not obligated under *Brady v. Maryland*, the tenants of due process, or the APA to disclose potentially exculpatory evidence in a disciplinary proceeding); *see Oudeh*, 2022 WL 18028281, at *3. Lastly, the judgment in the prior proceeding is final and valid, and the party to be foreclosed by the prior resolution of the issue—Polidi—had a full and fair opportunity to litigate the issue in the prior proceeding, having briefed the issue fully for the Eastern District of Virginia and the Federal Circuit. *See Oudeh*, 2022 WL 18028281, at *3. Accordingly, barring Polidi from attempting to relitigate this issue is appropriate. *See id.*

If the court finds that Polidi is collaterally estopped from asserting that he was owed discovery or disclosure of exculpatory information from Defendants in the reciprocal USPTO disciplinary proceeding, the instant case's similarity to *Neustadt* is clear. Without the allegation that the USPTO violated a duty it owes to the subjects of disciplinary proceedings, Polidi's FTCA claims can be summarized as follows: the USPTO and its officers have withheld exculpatory information from him, thereby enabling the NCSB to conceal misconduct that purportedly occurred during its investigation and preventing Polidi from defending himself. *See* Am. Compl. [DE-12] at 3–22. Viewed from this perspective, even in the light most favorable to Polidi, at the heart of Polidi's FTCA claims lies fraud, misrepresentation, and deceit—not the breach of a duty that existed separate and apart from the USPTO's obligation to use due care in obtaining and communicating information that Polidi was likely to rely on. *See Neustadt*, 366 U.S. at 702; *Russ*, F. Supp. 2d at 910. Thus, the court should find that the intentional torts exception bars Defendants'

19

waiver of sovereign immunity and dismiss with prejudice the first, third, fifth, and seventh causes of action for lack of subject matter jurisdiction. *See Longworth*, 2022 WL 4587520, at \*3.

If the court does not find that Polidi is collaterally estopped from arguing that he was owed discovery of allegedly exculpatory information from Defendants in the reciprocal USPTO disciplinary proceeding, *Neustadt* still applies and dismissing the FTCA claims for lack of subject matter jurisdiction is still appropriate. This is because, as the Eastern District of Virginia explained in *Polidi v. Lee I*, neither the Constitution nor the APA requires pretrial discovery. 2015 WL 136748601, at \*3 (citing 35 U.S.C. § 2(b)(2); *Stevens v. Tamai*, 366 F.3d 1325, 1333 (Fed. Cir. 2004); *Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875, 878 (4th Cir. 1985) ("Neither the Federal Rules of Civil Procedure nor the Federal Rules of Criminal Procedure apply to administrative hearings, and the Administrative Procedure Act fails to provide for discovery."); *Silverman v. Commodity Futures Trading Comm'n*, 549 F.2d 28, 33 (7th Cir. 1977) ("There is no basic constitutional right to pretrial discovery in administrative proceedings.")). Thus, viewing the alleged facts in the light most favorable to Polidi, the gravamen of Polidi's FTCA claims remains misrepresentation, fraud, and deceit, not the breach of a duty that existed separate and apart from the USPTO's obligation to use due care in obtaining and communicating information that Polidi was likely to rely on, *see Neustadt*, 366 U.S. at 702; *Russ*, F. Supp. 2d at 910, the intentional torts exception bars waiver of sovereign immunity, and the court should dismiss with prejudice the first, third, fifth, and seventh causes of action for lack of subject matter jurisdiction, *see Longworth*, 2022 WL 4587520, at \*3.

20

**B. The Eastern District of Virginia has exclusive jurisdiction to review Polidi's APA claims, and *sua sponte* transfer would be futile.**

Defendants argue that Polidi's second, fourth, and eighth causes of action should be dismissed for lack of subject matter jurisdiction because by statute, judicial review of USPTO disciplinary decisions is limited to the Eastern District of Virginia. Defs.' Mem. [DE-10] at 20–21. Polidi appears to counter that because his instant APA claims have been brought under 5 U.S.C. § 706 and 5 U.S.C. § 500, not 35 U.S.C. § 32 as in some of his prior cases, exclusive jurisdiction is not vested in the Eastern District of Virginia. Pl.'s Resp. [DE-22] at 18–19, 21.

To the extent that Polidi claims that his current APA claims are distinct from those he previously brought under § 32, the court should find that he is incorrect. Congress has given the USPTO, a federal agency, broad authority to "govern the conduct of proceedings before it and to govern the recognition and conduct of attorneys." *Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed. Cir. 2006) (citing *Stevens*, 366 F.3d at 1333), *cert. denied*, 549 U.S. 1205 (2007). As part of that grant of authority, § 32 specifically provides that the Director of the USPTO may,

> after notice and opportunity for a hearing, suspend or exclude, . . . from further practice before the Patent and Trademark Office, any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct . . . . The United States District Court for the Eastern District of Virginia, under such conditions and upon such proceedings as it by its rules determines, may review the action of the Director upon the petition of the person so refused recognition or so suspended or excluded.

Review of a USPTO disciplinary decision is conducted under the APA. *See Polidi*, 2015 WL 13674860, at *1 (citing *Bender v. Dudas*, 490 F.3d 1361, 1365 (Fed. Cir. 2007)). Thus, while the statutes are technically separate, § 32 does not function independently as Polidi claims. *See id.*

Based on a facial reading of § 32, the court should hold that it does not have subject matter jurisdiction to decide Polidi's APA claims. *See Chaganti*, 695 F. App'x at 548 ("Pursuant to 35

21

U.S.C. § 32, Mr. Chaganti petitioned the United States District Court for the Eastern District of Virginia for review of the Director's final order."). However, rather than transfer the action to the Eastern District of Virginia, Defendants urge the court to dismiss Polidi's APA claims outright. Defs.' Mem. [DE-10] at 21. Specifically, Defendants state that transferring the case "would be futile as [the Eastern District of Virginia] has warned [Polidi], on pain of monetary sanction, against filing *any* further action based on the disbarments." *Id.* (citing Defs.' Mem. Ex. 7 [DE-10-8] at 35). Polidi merely avers that venue is properly laid in the Eastern District of North Carolina. Pl.'s Resp. [DE-22] at 21.

If a court finds that it lacks jurisdiction over a case, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . ." 28 U.S.C. § 1631. Accordingly, a court may, on its own initiative, transfer an action to cure want of jurisdiction. *See, e.g., Est. of Thompson ex rel. Thompson v. Mission Essential Pers., LLC*, No. 1:11CV547, 2013 WL 6058308, at *7 (M.D.N.C. Nov. 14, 2013), *adopted sub nom. Est. of Thompson v. Mission Essential Pers., LLC*, 2014 WL 4745947 (M.D.N.C. Sept. 23, 2014); *Halim v. Donovan*, No. 12-00384 (CKK), 2102 WL 3291830, at * 2 (D.D.C. July 1, 2013) ("While a Court may on its own initiative transfer an action under 28 U.S.C. § 1631, the law of this Circuit also holds that sua sponte transfers pursuant to 28 U.S.C. § 1631 are committed to the discretion of the District Court where no party has moved to transfer a case brought in the wrong jurisdiction.") (internal quotation and citation omitted). "The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." *Reaves v. Hagel*, No. 5:12-CV-795-FL, 2013 WL 5674981, at *3 (E.D.N.C. Oct. 17, 2013).

Here, Defendants attached an order issued by the Eastern District of Virginia in *Polidi v. Lee III* that contains the following pertinent language:

> [G]iven [Polidi's] extensive repetitive litigation about his disbarment and the Court having previously warned him that continuing such improper repetitive litigation may subject him to sanctions, it is hereby ORDERED that plaintiff will be assessed the litigation expenses and some portion of government or private counsel's hourly rates if he files another meritless pleading in this court raising any issues related to *his* disbarment from the USPTO or the North Carolina State Bar.

Defs.' Mem. Ex. 7 [DE-10-8] at 35. Considering this language and the undersigned's ultimate recommendation that all claims be dismissed for reasons unrelated to the Eastern District of Virginia's exclusive jurisdiction over USPTO disciplinary claims, the court should dismiss with prejudice the second, fourth, and eighth causes of action rather than transfer the case. *See Mahoney v. Martin*, No. 5:21-HC-02150-M, 2021 WL 4314719, at *4 (E.D.N.C. Sept. 22, 2021) ("Because petitioner is not entitled to the relief that he seeks, it is not in the interest of justice to transfer the action back to the United States District Court for the District of Rhode Island.") (citing *Jones v. Braxton*, 392 F.3d 683, 691 (4th Cir. 2004)).

### C. The DJA does not confer subject matter jurisdiction based on the facts pleaded in the amended complaint.

Defendants argue that the court should dismiss Polidi's sixth and ninth causes of action for lack of subject matter jurisdiction. Defs.' Mem. [DE-10] at 21–22. Specifically, Defendants contend that the DJA is not an independent source of subject matter jurisdiction and the FTCA and APA do not waive sovereign immunity in the instant case; therefore, Polidi has failed to establish subject matter jurisdiction or waiver of sovereign immunity for the DJA claims. *Id.* In his response, Polidi merely states that the court "is submitted to possess jurisdiction over the declaratory judgment claim[s] in view of the [ ] Court's jurisdiction over the remaining claims." Pl.'s Resp. [DE-22] at 21.

23

The DJA provides that, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As the statutory language makes clear, "a claim under the Declaratory Judgment Act, even if made, does not confer jurisdiction." *N.C. Ins. Guar. Assoc. v. Becerra*, No. 5:20-CV-522-FL, 2021 WL 4302243, at *7 n.4 (E.D.N.C. Sept. 21, 2021) (quoting *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 221 n.7 (4th Cir. 2001)); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (explaining that, through the DJA, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction"). Accordingly, absent some independent jurisdictional basis, a DJA claim must fail. *Breedlove v. Heath*, No. 5:21-CV-132-D, 2022 WL 433312, at *1 (E.D.N.C. Feb. 11, 2022) (citing *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011)).

As explained *supra*, it is recommended that the court dismiss Polidi's FTCA and APA claims for lack of subject matter jurisdiction. *See* II.ii.3.A–B. Consequently, because the DJA does not independently confer subject matter jurisdiction, the court should also dismiss Polidi's DJA claims. *See Breedlove*, 2022 WL 433312, at *1. However, if the court does not dismiss either the FTCA or APA claims, it should still dismiss Polidi's DJA claims because the DJA does not waive sovereign immunity. *See Worsham v. U.S. Dep't of the Treasury*, No. ELH-12-2635, 2013 WL 5274358, at *7 (D. Md. Sept. 17, 2013) ("The Declaratory Judgment Act plainly does not operate as an express waiver of sovereign immunity . . . because it neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief.") (internal citations omitted).

24

DJA claims must only be considered if sovereign immunity has been waived through some other claim, *see Longworth*, 2022 WL 4587520, at *3, and considering that the undersigned recommends dismissing the FTCA claims because Polidi has failed to plausibly allege waiver of sovereign immunity, *see supra* II.i.3.A., the DJA claims may only be heard if the APA provides a waiver, *see Longworth*, 2022 WL 4587520, at *3. Under 5 U.S.C. § 702, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." However, the APA does not provide for judicial review where there is a preclusion of review statute and a special statutory review procedure provided, *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 917 (E.D. Va. 1994) (citing *Hostetter v. United States*, 739 F.2d 983, 985 (4th Cir. 1984)), and as explained *supra*, § 32 provides such a detailed statutory review scheme, *see Swyers v. U.S. Pat. & Trademark Off.*, No. 1:16-cv-1042, 2016 WL 6897788, at *1 (E.D. Va. Nov. 21, 2016) (prior case dismissed because the court "lacked jurisdiction to hear the claim because Congress intended through 35 U.S.C. § 32 to channel all Article III review of PTO disciplinary proceedings to a single court and only after the conclusion of administrative proceedings") (citation omitted). Accordingly, it is recommended that the court find that the FTCA, APA and DJA do not waive sovereign immunity in the instant case and dismiss the sixth and ninth causes of action with prejudice.

### 4. Polidi's causes of action are subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Defendants argue that if the court does not dismiss the claims against them for lack of subject matter jurisdiction, then dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate because res judicata bars Polidi's APA claims, DJA claims, and Privacy Act claim; judicial estoppel bars Polidi's FTCA claims; the APA claims are barred by the six-year statute of

25

limitations on actions against the United States; and the Privacy Act claim is moot. Defs.' Mem. [DE-10] at 23–26; Defs.' Mem. [DE-15] at 9–14. Polidi counters that "neither res judicata nor collateral estoppel duly applies"[7] and asserts that the USPTO "has never produced the entireties of 103 records as suggested in its motion." Pl.'s Resp. [DE-22] at 18–21.

### A. Polidi's APA, DJA, and Privacy Act claims are barred by res judicata.

Defendants argue that Polidi's APA, DJA, and Privacy Act causes of action fail to state a claim under Rule 12(b)(6) because of res judicata, which provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action," *United States v. Oudeh*, No. 5:22-CV-140-D, 2023 WL 8531774, at *3 (E.D.N.C. Dec. 8, 2023) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); and citing cases). Defs.' Mem. [DE-10] at 23– 25; Defs.' Mem. [DE-15] at 12–14. For res judicata to apply, the party invoking the doctrine must prove three things: the existence of a final judgment on the merits in a prior suit, an identity of the cause of action in both the earlier and later suit, and an identity of parties or their privies in the two suits. *Id.* (citing *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991); *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000)). When all three factors are satisfied, the precluded claim may properly be dismissed on a Rule 12(b)(6) motion. *Reaves v. Benjamin*, No. 5:18-CV-221-FL, 2018 WL 4289318, at *3 (E.D.N.C. Sept. 7, 2018) (citing *Andrews*, 201 F.3d at 524), *appeal dismissed and remanded*, 765 F. App'x 7 (4th Cir. 2019).

Here, Defendants state that the USPTO's decision to impose reciprocal discipline was upheld on direct appeal, barring relitigation of Polidi's APA claims; the Eastern District of Virginia previously deemed the same DJA claims precluded; and Polidi's Privacy Act claim could have

---

[7] It is unclear whether Polidi's reference to "collateral estoppel" was intended to mean "judicial estoppel."

26

been presented in an earlier case that considered the relevant USPTO document productions. Defs.' Mem. [DE-10] at 23–25; Defs.' Mem. [DE-15] at 12–14; *see Polidi*, 709 F. App'x at 1019; Defs.' Mem. Ex. 7 [DE-10-8] at 18–24; *Polidi*, 2023 WL 5673116; Defs.' Mem. Ex. 11 [DE-15-2] at 67–69.

### a. The APA Claims

Turning first to the APA claims, Polidi raises a variation of the same argument that he posed with respect to this court's subject matter jurisdiction over the same causes of action: namely, that his prior lawsuits were brought under 35 U.S.C. § 32, while the current suit has been brought under 5 U.S.C. §§ 500 and 706. Pl.'s Resp. [DE-22] at 18–19. Polidi contends that the APA provides relief that is separate and apart from the relief provided by § 32; "addresses matters which were not and could not have been brought or adjudicated under [§ 32]"; and allows a wider scope of discovery, in accordance with the Federal Rules of Civil Procedure, than § 32, which leaves the matter of discovery to the Eastern District of Virginia's discretion (and by extension, E.D. Va. Local Civ. R. 83.5). *Id.* at 19.

To the extent that Polidi argues that res judicata does not apply because the claims at issue in the current suit were brought under a different statute in Polidi's prior lawsuits, he is incorrect. As previously detailed, the APA and § 32 work in tandem because Congress has delegated authority to the USPTO via § 32, pursuant to the APA. *See supra* II.ii.3.B. Thus, courts review USPTO disciplinary decisions in light of both statutes, and § 32 is functionally inseparable from the APA. *Id.* However, even assuming for the sake of argument that Polidi's contentions on this issue are correct, he has failed to show that his instant APA claims are not barred by res judicata, and the court should dismiss the second, fourth, and eighth causes of action pursuant to Fed. R. Civ. P. 12(b)(6).

27

Beginning with the first factor of the res judicata analysis, the existence of a final judgment on the merits in a prior suit is indisputable, as Defendants cite to the final order in *Polidi v. Lee I*, which affirmed the USPTO, dismissed Polidi's petition for judicial review, and was later affirmed by the Fourth Circuit in *Polidi v. Matal*. Defs.' Mem. [DE-10] at 23; *see Polidi v. Lee I*, 2015 WL 13674860 at *1–4; *Polidi v. Matal*, 709 F. App'x at 1017–19; *In re Rodgers*, No. 5:13-CV-764-FL, 2016 WL 917317, at *5 (E.D.N.C. Mar. 8, 2016) ("A 'final judgment on the merits' is one 'which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court.'") (quoting *Veazey v. City of Durham*, 57 S.E.2d 377, 381 (N.C. 1950)). The second factor is less straightforward given Polidi's emphasis on the instant suit's claims under 5 U.S.C. §§ 500 and 706 versus *Polidi v. Lee I*'s 35 U.S.C. § 32 claims. However, the court should nevertheless find that the § 32 claims in *Polidi v. Lee I* are identical to the instant APA claims for claim preclusion purposes. *See Oudeh*, 2022 WL 18028281, at *3.

When a legal claim raised in a subsequent action differs from a legal claim raised in a past action, courts apply a transactional approach to determine identity. *McDaniel v. Green Dot Corp.*, No. 5:23-CV-406-D, 2024 WL 102866, at *4 (E.D.N.C. Jan. 9, 2024) (citing *Meekins*, 946 F.2d at 1057), *appeal dismissed*, No. 24-1100, 2024 WL 2558912 (4th Cir. May 24, 2024). Through this lens, the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment. *Id.* In making this determination, the court should consider the claims' "relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Cruthirds*, 2017 WL 3754764, at *5 (citing *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999) (quoting Restatement (Second) of Judgments § 24 cmt. b)).

In *Polidi v. Lee I*, Polidi sought judicial review via § 32 of the USPTO's order imposing reciprocal discipline and discovery of any material that "tends to assist in the defense of the present matter." 2015 WL 13674860, at *2. Polidi contended that the USPTO was obligated to disclose potentially exculpatory information under *Brady v. Maryland* and that he should be permitted to subpoena the NCSB for such materials as well. *Id.* at *2–3. Similarly, in the present case, Polidi once more contests the USPTO's decisions to reciprocally disbar him and not disclose certain information—namely, allegedly exculpatory evidence—via the APA. Am. Compl. [DE-12] ¶¶ 69–71, 112–14, 168–70. While the instant APA claims and the *Polidi v. Lee I* § 32 claims were brought under different statutes, considering their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes, Polidi had the same facts available to him at the time of both lawsuits and seeks recovery for conduct that shares the same basic nucleus of facts. *See McMillan v. Metropolitan Life Ins. Co.*, No. 7:14-CV-39-F, 2014 WL 7205227, at *3 (E.D.N.C. Dec. 17, 2014) (finding res judicata factor two satisfied where plaintiff's earlier and later claims were "rooted in the same transactional nucleus of facts, namely that he (1) received disability benefits, (2) desired to return to work, (3) was told that he could not return to work because he was still disabled, and (4) was allegedly deceived as to his actual disability status and ability to return to work."); *Cruthirds*, 2017 WL 3754764, at *5 ("Although plaintiff has alleged new claims for disability discrimination, violation of EEOC guidelines, and intentional infliction of emotional distress in her amended complaint, these claims arise from the same pattern of alleged discriminatory and retaliatory conduct that formed the basis of her earlier suit."). Thus, Polidi's APA claims could have been raised (and arguably were raised) in *Polidi v. Lee I* and are identical for res judicata purposes. *See id.*; *accord Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) ("Were we to focus on the claims asserted in each suit, we would allow parties to

29

frustrate the goals of res judicata through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.") (italicization omitted) (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991)).

Finally, regarding the third res judicata factor, in *Polidi v. Lee I* the parties were Polidi and Michelle Lee, who was named in her official capacity as Undersecretary of Commerce for Intellectual Property and Director of the USPTO,[8] *see* 2015 WL 13674860, and both Polidi and the USPTO are parties to the instant case, *see* Am. Compl. [DE-12] ¶ 5. The individual Defendants were not parties to the earlier suit, *see Polidi*, 2015 WL 13674860, however, there is a long-standing rule in the Fourth Circuit that a final judgment in a suit against the sovereign bars further litigation against an agent or employee of the sovereign in her official capacity. *United States v. Wise*, No. 5:14-CV-844, 2016 WL 755627, at *3 (E.D.N.C. Feb. 25, 2016) ("Thus, because the Wises earlier levied an unsuccessful suit against the USDA, they cannot now assert any claim against the USDA employees previously named in this suit in their official capacities, where the two suits arise out of the same factual basis.") (citing *Thurston*, 810 F.2d 438, 444 (4th Cir. 1987)). That rule clearly applies here because the individual Defendants are named in their official capacities following a final judgment on the merits in a suit arising out of the same core nucleus of fact. *See Polidi*, 2015 WL 13674860. Accordingly, the court should find that Polidi's second, fourth, and eighth causes of action are precluded and dismiss them with prejudice. *See Wise*, 2016 WL 755627, at *3; *Oudeh*, 2023 WL 8531774, at *3.

---

[8]A suit against a federal official for acts performed within her official capacity amounts to an action against the sovereign. *Thurston v. United States*, 810 F.2d 438, 444 (4th Cir. 1987); *Jones v. Houston*, No. 4:08-CV-121-F, 2010 WL 3835147, at *6 (E.D.N.C. Sep. 28, 2010) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")). Thus, in *Polidi v. Lee I*, Polidi and the USPTO were both parties to the suit. *See id.*

30

### b. The DJA Claims

The court should also find that Polidi's DJA claims are barred by res judicata. In their brief, Defendants cite to an order issued by the Eastern District of Virginia in *Polidi v. Lee III*. Defs.' Mem. [DE-10] at 23–25; *see* Defs.' Mem. Ex. 7 [DE-10-8] at 18–24. In that order, the court dismissed a nearly identical DJA claim for lack of subject matter jurisdiction, finding that the United States had not waived its sovereign immunity.[9] Defs.' Mem. Ex. 7 [DE-10-8] at 20–22. However, the Eastern District of Virginia expressly stated in dicta that "[e]ven if the Court were to have jurisdiction, it is abundantly clear that the [DJA] claim against the United States is barred by the doctrine of res judicata . . . . The entirety of [Polidi's] case consists of nothing more than his continued disagreement with the USPTO's denial of discovery [of allegedly exculpatory evidence] in his disciplinary proceeding and ultimate disbarment—decisions that both the Eastern District of Virginia and the Federal Circuit have already upheld." *Id.* at 22–23 (emphasis omitted).

The Eastern District of Virginia's reasoning is persuasive. As explained above, in *Polidi v. Lee I*, Polidi challenged the USPTO's decisions to impose reciprocal discipline and not disclose potentially exculpatory material. 2015 WL 13674860, at *2–3. The case was decided in a final order that affirmed the decision of the USPTO and dismissed Polidi's petition for judicial review, and that order was subsequently affirmed by the Federal Circuit. *Id.* at *4; 709 F. App'x 1016 at 1019; *see In re Rodgers*, 2016 WL 917317, at *5. Polidi now asks the court to declare that "the foregoing inaction [failure to disclose allegedly exculpatory information] and other wrongful conduct existed in the ethics proceeding before the USPTO"; the "[c]onduct of Federal Defendants

---

[9] Polidi alleged, *inter alia*, that the USPTO prevented him from "being able to prove the dishonest conduct in North Carolina by suppressing all evidence and proof known by Defendants to demonstrate said dishonesty," and requested that the court issue a declaratory judgment stating that "violations by Defendants as summarized above[] . . . took place in this matter." [DE-10-8] at 7–15.

31

was inconsistent with 37 CFR §§11.303, 11.304, 11.801, 11.803, 11.804, and other ethical mandates which are believed to govern all USPTO practitioners, including the conduct of Federal Defendants in connection with this matter"; the "conduct of Federal Defendants violated public policy"; Defendants "had actual knowledge that exculpatory evidence was being withheld and concealed"; and the "withheld evidence demonstrates a deprivation of due process in the underlying ethics prosecution by the NCSB." Am. Compl. [DE-12] ¶¶ 127, 171–75. Viewed through a transactional lens, *McDaniel*, 2024 WL 102866, at *4, this claim shares the same factual basis as the claims asserted in *Polidi v. Lee I* and has been brought against the USPTO and parties in privity with the USPTO, *see Wise*, 2016 WL 755627, at *3; *accord Pueschel*, 369 F.3d at 355. Consequently, all three res judicata factors are satisfied and the court should dismiss the sixth and ninth causes of action with prejudice.

### c. The Privacy Act Claim

As an initial matter, as previously described, Polidi supports his Privacy Act allegations by referring to a number of exhibits attached to the amended complaint, all of which constitute correspondence conducted via email or letter between Polidi and the USPTO concerning his FOIA requests. Am. Compl. [DE-12] ¶¶ 177, 179; *see* [DE-12-1 to -12-3]. Polidi also attached several related exhibits to his response. Pl.'s Resp. Exs. 1 & 2 [DE-22-1 to -22-2]. In the instant motion, Defendants reference some of the exhibits Polidi filed with the amended complaint. Defs.' Mem. [DE-15] at 5–7. Defendants also attached several exhibits of their own pertaining to the Privacy Act claim, Defs.' Mem. Ex. 11 [DE-15-1 to -15-2], and refer frequently to the final order in *Polidi v. Mendel I*, Defs.' Mem. [DE-15] at 7–8, 12–14.

The court may consider the exhibits Polidi attached to the amended complaint because they are expressly incorporated into the complaint by reference. *Straw*, 2020 WL 1042141, at *2; Am.

32

Compl. [DE-12] ¶¶ 177, 179. The court may also consider the final order in *Polidi v. Mendel I* because it is properly subject to judicial notice and thus appropriate for the court to reference at the motion to dismiss stage. *See supra* II.ii.2. However, the court may not consider any of the exhibits Defendants attached to the motion to dismiss or any of the exhibits Polidi attached to his response, as they are not "integral" to the complaint. *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (finding that the court may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic"); *see also Phillips v. LCO Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (considering a statement attached to a motion to dismiss where "it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity."). To be integral to the complaint, a document must, "by its very existence, and not the mere information it contains, give[ ] rise to the legal rights asserted." *Tagirova v. Elizabeth City State Univ.*, No. 2:16-CV-70-D, 2017 WL 4019516, at *4 (E.D.N.C. Sept. 11, 2017) (collecting cases); *Jacobs v. Zurich Am. Ins. Co.*, 2022 WL 16952013, at *2 (D.S.C. Nov. 15, 2022) (concluding an integral document "must do more than contain information that is important to the plaintiff's claims. Instead, its very existence must give rise to the legal rights asserted.") (citing *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021)). Defendants' exhibits, which consist of communications between the USPTO and Polidi, as well as an affidavit completed by a USPTO FOIA Officer, do not meet that standard. *See* Defs.' Mem. Ex. 11 [DE-15-1 to -15-2]. Nor do the exhibits Polidi attached to his response, which consist of communications between the USPTO and Polidi and court documents filed by Polidi's prior counsel in other litigation. *See* Pl.'s Resp. Ex. 1 & 2 [DE-22-1 to -22-2].

Turning to the Privacy Act claim itself, the undersigned briefly summarizes the additional information gleaned from *Polidi v. Mendel I* and the exhibits attached to the amended complaint

33

so that the court may better evaluate the motion to dismiss. Polidi first requested documents from the USPTO on July 18, 2017 via the FOIA. *Polidi*, 2023 WL 5673116 at *1. Shortly thereafter, Polidi narrowed his request to seek "all communications and any other documents from anyone associated with the North Carolina State Bar." *Id.* The USPTO responded to this request on October 26, 2017, indicating that the search for these records yielded 103 pages of responsive documents, 91 of which were withheld in full pursuant to several FOIA exemptions, and 12 which were produced unredacted. *Id.* This request was labelled "FP-17-0031" ("Request No. FP-17-0031") and processed as both a FOIA and Privacy Act request. Am. Compl. Ex. 2 [DE-12-2] at 6–9.

On June 29, 2021, Polidi sued the USPTO in the District Court for the District of Columbia ("District of Columbia"). *Polidi*, 2023 WL 5673116 at *1. Polidi filed a second amended complaint in *Polidi v. Mendel I* on January 13, 2022, in part to add a claim under the FOIA pertaining to Request No. FP-17-0031. *Id.* Days after filing the second amended complaint, Polidi then submitted a second request for documents from the USPTO, seeking the same kind of documents as were described in Request No. FP-17-0031. *Id.* at *2. At this time, Polidi noted that the request ("Request No. FP-22-00004") should be processed under the Privacy Act and not the FOIA. Am. Compl. Ex. 2 [DE-12-2] at 2, 8.[10] The USPTO responded to Request No. FP-22-00004 on April 27, 2022. *Id.* at 13. In doing so, the USPTO identified the same documents responsive to Request No. FP-22-00004 as it had located for Request No. FP-17-0031. *Polidi*, 2023 WL 5673116 at *2. However, this time the USPTO was able to release twenty-three pages in full and eighty pages with partial redactions. *Id.*

---

[10] The amended complaint and attached correspondence make it clear that Polidi does not believe that Request No. FP-17-0031 was processed under both the Privacy Act and the FOIA, despite the USPTO's assertions to the contrary. *See, e.g.*, Am. Compl. Ex. 2 [DE-12-2] at 9.

34

On July 22, 2022, the District of Columbia dismissed all the claims in *Polidi v. Mendel I*, except for the FOIA claim. *Id.* The FOIA claim was transferred to the Eastern District of Virginia and decided on the USPTO's motion for summary judgment, to which Polidi failed to respond after receiving multiple extensions of time to do so. *Id.* At summary judgment, the Eastern District of Virginia found it appropriate to consider the USPTO's response to Request No. FP-22-00004 as an amended response to FP-17-0031 and held that the FOIA exemptions cited by the USPTO were valid reasons to withhold and/or redact the relevant produced documents, and that the USPTO "disclosed all reasonably segregable information to [Polidi]." *Id.* at *2–5. Polidi later moved to set aside the final order, "not[ing] that [the NCSB report] is not public in nature, and a claim under the Privacy Act was not ripe at the time of filing the Second Amended Complaint," Defs.' Mem. Ex. 11 [DE-15-2] at 59, but the court denied the motion, *Polidi v. Mendel*, 1:22-cv-00925-PTG (E.D. Va.), [DE-47]. Polidi has since appealed the decision. *Id.*, [DE-50].

In the instant case, Polidi once again alleges that the USPTO has violated the Privacy Act by continuing to improperly withhold the NCSB report. Am. Compl. [DE-12] ¶¶ 176–87. Polidi specifically takes issue with the agency's repeated citations to various FOIA exemptions even though Request No. FP-22-00004 was purportedly made under the Privacy Act and not the FOIA. *Id.* Defendants argue that Polidi's "denial of access claim and any residual claim challenging the redactions to the documents produced [by the USPTO]" are barred by res judicata and should be dismissed. Defs.' Mem. [DE-15] at 12. However, Polidi counters that res judicata does not bar his Privacy Act claim because "the USPTO has never produced the entireties of 103 records as suggested in its motion," and at the time that he filed the second amended complaint in *Polidi v. Mendel I*, he had only issued Request No. FP-17-0031 to the USPTO under the FOIA, not the Privacy Act, as in Request No. FP-22-00004. Pl's. Resp. [DE-22] at 19–20.

35

The court should find that res judicata bars Polidi's Privacy Act claim. First, the Eastern District of Virginia's order granting summary judgment to the defendants in *Polidi v. Mendel I*, 2023 WL 5673116, is a final judgment on the merits despite the fact that it is currently on appeal to the Fourth Circuit. *See Orr v. U.S. EPA*, 641 F. Supp. 3d 258, 268 (W.D.N.C. 2022) ("A trial court's judgment takes effect despite a pending appeal, as 'a judgment's preclusive effect is generally immediate.'"); *Hammock v. Barnes*, No. BAH-22-482, 2024 WL 1374795, at \*10 (D. Md. Apr. 1, 2024) ("For purposes of res judicata, a summary judgment has always been considered a final disposition on the merits.") (emphasis omitted) (quoting *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n.3 (4th Cir. 1984)).

Second, in *Polidi v. Mendel I*, the USPTO was a party, 1:22-cv-00925-PTG (E.D. Va.), and in the instant case, the agency is not only named as a party, but the individual Defendants are named in their official capacities as USPTO employees, Am. Compl. [DE-12] at 1. *Wise*, 2016 WL 755627, at \*3. Finally, viewing the FOIA claim at issue in *Polidi v. Mendel I* and the Privacy Act claim at issue here through a transactional lens, *McDaniel*, 2024 WL 102866, at \*4, and considering their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes, *Cruthirds*, 2017 WL 3754764, at \*5, Polidi had the same facts available to him at the time of both lawsuits and seeks to recover for conduct that shares the same basic nucleus of facts. Polidi's argument to the contrary—namely, that at the time he filed the second amended complaint in *Polidi v. Mendel I*, he had not yet submitted Request No. FP-22-00004 to the USPTO, so any potential Privacy Act claim was not ripe—does not change this conclusion. *See* Pl.'s Resp. [DE-22] at 19–20. In its order, the Eastern District of Virginia described the USPTO's responses to both Request No. FP-17-0031 and Request No. FP-22-00004 in detail, and clearly noted that it was considering the USPTO's response to Request No. FP-22-

36

00004 as the amended response to Request No. FP-17-0031. 2023 WL 5673116, at *1–2. Accordingly, the court should find that Polidi's tenth cause of action is precluded and dismiss it with prejudice. *See Wise*, 2016 WL 755627, at *3; *Oudeh*, 2023 WL 8531774, at *3.

### B. Polidi's FTCA claims are barred by judicial estoppel.

Defendants argue that Polidi has failed to state a plausible FTCA claim because the doctrine of judicial estoppel "bars [Polidi's] assertion of the predicate, namely, he 'is judicially estopped from alleging that his disbarment was obtained by fraud or misconduct on the part of those participating in the proceeding.'" Defs.' Mem. [DE-10] at 25–26 (quoting *Polidi v. Truax*, No. 1:17CV54, 2017 WL 4465408, at *2 (M.D.N.C. June 1, 2017), *aff'd*, 706 F. App'x 797 (4th Cir. 2017)). Polidi counters that,

> Importantly, in view of the administrative filings in this matter and the lack of any response, the claims under the FTCA were not even ripe at the time of filing the petition for judicial review, or of filing either the original or amended complaint in the *Bivens* action. The Defendants actually asserted to the Eastern District of Virginia that the Court lacked subject matter jurisdiction over such claims because they had not yet responded to the administrative filings.

Pl's. Resp. [DE-22] at 19. Thus, he does not appear to address Defendants' judicial estoppel argument, however the undersigned will briefly consider the merits of their position below.

Judicial estoppel "precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *Oudeh*, 2022 WL 18028281, at *6 (citing *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996)). The purpose of the doctrine is to prevent a party "from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Id.* Judicial estoppel applies when the party to be estopped takes a factual position that is inconsistent with a position taken in prior litigation; the earlier position was accepted by the court in the first proceeding; and the party to be estopped acted intentionally, not inadvertently. *Id.*

37

In *Polidi v. Truax*, the court found that Polidi "consented to the surrender of his law license based upon his stipulation to certain facts. He should not be permitted to thereafter sue the adversaries in those disbarment proceedings for irregularities in any facts that were found in that proceeding based upon Plaintiff's stipulation." 2017 WL 4465408, at *2. This holding is persuasive because the same circumstances apply in the instant case, where Polidi seeks to challenge the USPTO disciplinary proceeding via the FTCA after stipulating, *inter alia*, that "the material facts upon which the [NCSB disciplinary investigation] is predicated are true" and "if disciplinary charges were predicated upon the misconduct under investigation, [he] could not successfully defend against them." *See* Defs.' Mem. Ex. 10 [DE-10-11]. Accordingly, the court should find that Poldi is judicially estopped from asserting that the NCSB and USPTO disciplinary proceedings and his eventual disbarment were based on fraud or otherwise unethical conduct and dismiss with prejudice the first, third, fifth, and seventh causes of action for failure to state a claim.

### C. Polidi's APA claims are barred the statute of limitations outlined in 28 U.S.C. § 2401(a).

Defendants argue that even if the court had subject matter jurisdiction, Polidi's APA claims are barred by the six-year statute of limitations on actions against the United States established in 28 U.S.C. § 2401(a). Defs.' Mem. [DE-10] at 2, 13, 23. Polidi does not address this point.

A statute of limitations affirmative defense can be raised in a Rule 12(b)(6) motion; however, it is seldom appropriate to do so. *Diop v. BMW of N.A., LLC*, 511 F. Supp. 3d 679, 684 (E.D.N.C. 2021) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses.")). Accordingly, a statute of limitations defense must clearly appear on the face of the complaint. *Id.* In other words, the

38

complaint must clearly allege "all facts necessary to the affirmative defense." *Id.* (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). When the facts necessary to the affirmative defense are not apparent on the face of the complaint, discovery is appropriate. *Id.* (citing *Cruz v. Maypa*, 773 F.3d 138, 146–47 (4th Cir. 2014) (reversing in part the district court's decision to grant the defendant's motion to dismiss because the plaintiff's claims were time-barred and remanding for discovery so the district court could determine if any or all of plaintiff's claims were equitably tolled)).

The APA does not have its own statute of limitations. *Winston v. U.S. Dep't of Ed.*, No. 8:22-cv-01965-AAQ, 2023 WL 8452451, at \*3 (D. Md. Dec. 6, 2023) (citing *Jersey Heights Neighborhood Ass'n v. Glending*, 174 F.3d 180, 186 (4th Cir. 1999)). There is, however, a limitations period applicable to all claims against the federal government. *See* 28 U.S.C. § 2401(a). "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *Id.* A complaint against a federal agency under the APA "is a 'civil action' within the meaning of section 2401(a)," and is accordingly subject to the six-year statute of limitations. *Winston*, 2023 WL 8452451, at \*3 (quoting *Jersey Heights Neighborhood Ass'n*, 174 F.3d at 186). The six-year statute of limitations begins to run at the time of the challenged final agency action. *Id.* (citing *Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012)); *Jersey Heights Neighborhood Ass'n*, 174 F.3d at 186 ("Conduct becomes reviewable under the APA upon final agency action, . . . in other words, when the agency has completed its decision[-]making process, and [when] the result of that process is one that will directly affect the parties.") (internal citation and quotation marks omitted).

Here, Polidi's APA claims generally contest the USPTO's reciprocal disbarment investigation and, more specifically, the agency's decision not to disclose allegedly exculpatory

evidence related to the underlying NCSB disciplinary proceeding during that investigation. Am. Compl. [DE-12] ¶¶ 69–71, 112–14, 168–70. As is clear on the face of the amended complaint— and made clearer by judicially noticed records properly before the court—the challenged final agency action occurred on July 14, 2015, when the USPTO concluded its investigation and issued an order excluding Polidi from practicing before it. *See Diop*, 511 F. Supp. 3d at 684; *Jersey Heights Neighborhood Ass'n*, 174 F.3d at 186; Am. Compl. [DE-12] ¶¶ 24–49, 76–97; *Polidi*, 2015 WL 13674860, at *2. Polidi filed the instant case on September 22, 2023, well outside of the six-year limitations period established in § 2401(a). [DE-1]. While the statute provides a tolling period for individuals "beyond the seas" or with legal disabilities, § 2401(a), there is no reason to believe that any of those circumstances apply here, particularly considering Polidi's extensive litigation history over the past nine years. Accordingly, if the court does not dismiss the second, fourth, and eighth causes of action for lack of subject matter jurisdiction or res judicata, it should dismiss them as time barred.

### D. Polidi fails to state a claim under the Privacy Act, but even if he did so, the claim is moot.

Defendants argue that if the court does not dismiss Polidi's Privacy Act claim as precluded, then the claim should be dismissed as moot. Defs.' Mem. [DE-15] at 10–12. Polidi appears to challenge this assertion by stating that "the USPTO has never produced the entireties of 103 records as suggested" and has never produced the NCSB report. Defs.' Resp. [DE-22] at 19.

The Privacy Act provides four different bases for a cause of action against a federal agency. 5 U.S.C. § 552a(g)(1)(A)–(D). An individual may bring a civil action when the agency "makes a determination . . . not to amend an individual's record in accordance with [the individual's] request, or fails to make such review in conformity" with the relevant provisions of the Privacy Act;

40

"refuses to comply with an individual request" for access to an individual's own records; "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness" in a determination relating to an individual "that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual"; or "fails to comply with any other provision" of the Privacy Act "in such a way as to have an adverse effect on an individual." *Id.* Here, based on the facts alleged in the amended complaint, Polidi has presumably brought a denial of access claim. Am. Compl. [DE-12] ¶¶ 176–87.

To state a claim for denial of access, a plaintiff must show three things: that a request for records was made, that the request was denied, and that such a denial or failure to act was improper under the Privacy Act. *Jones v. Dep't of Def. Def. Logistics Agency Def. Supply Ctr., Richmond*, No. 3:21cv288, 2023 WL 5673435, at \*22 (E.D. Va. Sept. 1, 2023) (citing *Biondo v. Dep't of Navy*, 928 F. Supp. 626, 631 (D.S.C. 1995)). Notably, in an access case, once the agency produces the requested documents, the claim for relief becomes moot. *Falwell v. Exec. Off. of the President*, 158 F. Supp. 2d 734, 740 (citing *Biondo*, 928 F. Supp. at 631; *Reg'l Mgmt. Corp., Inc. v. Legal Servs. Corp.*, 186 F.3d 457, 464–65 (4th Cir. 1999)).

Here, even construing the amended complaint liberally and accepting the allegations therein as true, Polidi has failed to show that the USPTO denied his records request or responded to it improperly. Correspondence Polidi attached to the amended complaint shows that the USPTO responded to Request No. FP-22-00004 on April 27, 2022, and that in doing so, the agency identified 103 pages of responsive documents, produced all 103 to Polidi with only some portions redacted, and noted that "no additional documents concerning the nature of the present and 2017 requests have been received since the response to FOIA request #FP-17-00031." Am. Compl. Ex.

41

2 [DE-12] at 13–15. Earlier correspondence, which Polidi also attached to the amended complaint, indicates that the "FP" label—which was attached to both Request No. FP-17-00031 and Request No. FP-22-00004—"means that [the request] was considered both a FOIA and a Privacy Act request." *Id.* at 8–9. Thus, in baldly asserting that "the exemptions were made improperly . . . [and] the USPTO intentionally did not even account for the single report made to the North Carolina Bar's Grievance Committee," Am. Compl. [DE-12] ¶ 185, Polidi's allegations run counter to the exhibits that he specifically incorporated by reference into the complaint. Consequently, he has not alleged that the USPTO failed to respond or improperly responded to his document requests, and he has failed to state a claim for denial of access under the Privacy Act. *See Jones*, 2023 WL 5673435, at *22.

For similar reasons, even if Polidi could state a claim for relief under the Privacy Act, the request is moot. Polidi's incorporated exhibits indicate that the agency has produced all the responsive documents and information it can produce not once, but twice. Am. Compl. Ex. 2 [DE-12] at 13–15. While Polidi may not believe that this is true, he has not plausibly alleged otherwise and has in fact contradicted his own claims to the contrary. Thus, the issue is moot and dismissal with prejudice is appropriate. *See Falwell*, 158 F. Supp. 2d at 740.

## 5. Alternatively, the individual Defendants are subject to dismissal, and if the court dismisses the Privacy Act claim, so is the USPTO.

Defendants argue that if the court decides not to dismiss Polidi's claims against them for lack of subject matter jurisdiction or failure to state a claim, then the USPTO and all individual Defendants should be dismissed from the lawsuit. Defs.' Mem. [DE-10] at 26–27. Polidi does not provide any argument to the contrary, but the undersigned will briefly evaluate the merits of Defendants' position below.

42

Turning first to the individual Defendants, all are named in their official capacities only. "Suits against public officers in their official capacities actually raise claims against the entity for which the officer works." *Ferrell v. Town of Lillington*, No. 5:15-CV-677-BO, 2016 WL 3348538, at *2 (E.D.N.C. June 13, 2016) (quoting *Anderson v. Caldwell Cnty.*, 524 F. App'x 854, 856 n.1 (4th Cir. 2013) (per curiam); and citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'")). As such, courts routinely dismiss as redundant claims naming both individuals in their official capacities and the entities that they represent. *See id.* (dismissing official capacity suits against law enforcement officers as duplicative of claims against the Town of Lillington); *Hill v. Robeson Cnty., N.C.*, 733 F. Supp. 2d 676, 682 (E.D.N.C. 2010); *Calloway v. City of Goldsboro*, No. 5:16-CV-791-D, 2017 WL 11746219, at *3 (E.D.N.C. Aug. 4, 2017). Thus, dismissing the individual Defendants with prejudice is recommended here.

Whether the court should dismiss the USPTO is a more complicated question. The FTCA states that "the authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under [ ] this title." 28 U.S.C. § 2679(a). Thus, the United States is the only proper defendant in an FTCA action—not an agency like the USPTO. *Vickers v. United States*, No. 1:20 CV 92 MR WCM, 2021 WL 1811570, at *3 (W.D.N.C. May 6, 2021) (citing *Johnson v. United States*, No. 3:15-CV-00556-RJC-DSC, 2016 WL 2757609 at *4 (W.D.N.C. March 24, 2016), *adopted by*, 2016 WL 2627043 (W.D.N.C. May 9, 2016), *aff'd*, 670 F. App'x 780 (4th Cir. 2016)). The limitations established by the APA and DJA are not as strict, *see* 5 U.S.C. § 703 (proper defendants in an APA action are "the United States, the agency by its official title, or the appropriate officer"); 28 U.S.C. § 2201(a) ("any court of the United States, upon the filing of an appropriate pleading, may declare

43

the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"), but the same cannot be said of the Privacy Act, as courts have found that the United States is not a proper party to such actions. *Sheppard v. Revell*, No. 5:09-CT-3044-FL, 2010 WL 3672261, at \*2 (E.D.N.C. Sept. 20, 2010) (citing *Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987); *Mumme v. U.S. Dep.'t of Labor*, 150 F. Supp. 2d 162, 169 (D. Me. 2001) ("a [plaintiff] bringing a Privacy Act claim must bring a suit against a particular agency, not the entire United States.")). Taking these factors into consideration, if the court dismisses the Privacy Act claim, it is recommended that the court dismiss the claims against the USPTO as duplicative, since the United States is already named as a party and is a proper defendant for Polidi's FTCA, APA, and DJA claims while the USPTO is not. If the court does not dismiss the Privacy Act claim, however, then the USPTO should remain a party to the instant case.

### III.    Conclusion

For the reasons stated herein, it is recommended that the motion to dismiss, [DE-15], be allowed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the parties. You shall have until **Thursday, October 10, 2024**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

44

If you do not file written objections to the Memorandum and Recommendation (M&R) by the foregoing deadline, you will be giving up the right to review of the M&R by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the M&R without such review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the M&R. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

Submitted, this the 26th day of September, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge